OPINION
{¶ 1} The defendant-appellant, Ronald Lester, appeals the judgment and sentence of the Wyandot Court of Common Pleas sentencing him to three years incarceration.
 {¶ 2} Lester was a sales representative supplying parts to Thyssen Krupp Budd, an automobile plastic manufacturing company in Carey, Ohio. In March 2004, a Thyssen Krupp Budd employee notified the Carey police department about thefts that took place at the plant. The record indicates that Lester was a possible suspect.
 {¶ 3} In joint collaboration between the Carey police department, the Wyandot Prosecutor's Office, and Ohio Bureau of Criminal Investigation, a video camera was set up in Thyssen Krupp Budd's tool room in order to monitor activity therein.
 {¶ 4} On April 22, 2004, video surveillance footage recorded Lester taking proximity switches from two different drawers in the tool room. The police immediately responded and arrested Lester. An inventory of the tool room after Lester was arrested was compared with the inventory of the tool room before he arrived, and the comparison confirmed that Lester stole the proximity switches.
 {¶ 5} On April 24, 2004, the Carey police department received a phone call from William Murray. Murray informed the police that Lester contacted him and requested that Murray create fraudulent invoices to cover the "sale" of the proximity switches that Lester was accused of stealing. Lester gave Murray detailed information about the type of switches involved, but Murray declined his request.
 {¶ 6} On May 5, 2004, Lester contacted his bank and informed his account manager that he was "in trouble." Furthermore, Lester requested that both of his savings accounts be transferred to his wife's name.
 {¶ 7} Lester was charged with one count of aggravated theft in violation of R.C. 2913.02(A)(1), a felony in the third degree and pled guilty. At the sentencing hearing on January 19, 2005, Thyssen Krupp Budd's plant controller testified that during the time that Lester was stealing from the plant, one tool room manager was terminated because inventory was missing. Moreover, several maintenance employees and electronic technicians were wrongfully accused of theft. The plant controller stated that the plant had to spend additional time and money restructuring the tool room and performing numerous inventories. Finally, the plant controller testified that, in his conservative estimate, approximately $480,000 worth of inventory was stolen.
 {¶ 8} Additionally, an investigator from the Wyandot County prosecutor's office testified about his investigation. Specifically, the investigator stated that Lester paid $140,000 in restitution.
 {¶ 9} The trial judge sentenced Lester to three years in prison. It is from this judgment and sentence that Lester appeals alleging two assignments of error. For the sake of judicial economy, both assignments will be discussed together.
The Trial Court's imposition of a prison term greater than theminimum upon a first time offender is not supported by therecord.
 The sentence imposed by the trial court is contrary to law.
 {¶ 10} Initially, we note that in reviewing the sentencing decision of a trial court, an appellate court must "review the factual findings of the trial court under R.C. 2929.19(G)'s `clear and convincing' standard, and that the appellate record is not complete until such findings have been made." State v.Martin (1999), 136 Ohio App.3d 355, 361, 736 N.E.2d 907. Thus, a sentence imposed by the trial court will not be disturbed absent a showing by clear and convincing evidence that the trial court committed one of the errors described by R.C. 2953.08(G): the sentence is unsupported by the record; the procedure of the sentencing statutes was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law.
 {¶ 11} In determining what sentence to impose upon a defendant, a trial court is "granted broad discretion in determining the most effective way to uphold" the two overriding purposes of felony sentencing: "to protect the public from future crimes and punish the offender." State v. Avery (1998),126 Ohio App.3d 36, 50, 709 N.E.2d 875. However, trial courts are required "to make various findings before properly imposing a felony sentence." State v. Alberty (Mar. 28, 2000), 3rd Dist. No. 1-99-84. In fact, the trial court's findings under R.C.2929.03, 2929.04, 2929.11, 2929.12, 2929.14, and 2929.19, in effect, determine a particular sentence, and a sentence unsupported by these findings is both incomplete and invalid. SeeMartin, 136 Ohio App. at 361.
 {¶ 12} Pursuant to R.C. 2929.14(A)(3), a felony of the third degree, as this case presents, warrants a definite prison term of one, two, three, four, or five years. The three years prison term imposed by the trial court clearly falls within the range. However, "R.C. 2929.14(B) mandates that when imposing a prison sentence upon an offender for a felony when the offender has not previously served a prison term, a court must impose the shortest prison term authorized for the offense unless the court finds on the record that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender." State v.Jones (2001), 93 Ohio St.3d 391, 398, 754 N.E.2d 1252.
 {¶ 13} At the sentencing hearing in the case before us, the trial court stated, among other things:
The Court does note, pursuant to the factors in 2929.13(B),that the defendant did hold a position of trust. The Courtfurther finds after considering the factors pertaining to theseriousness of the offense and whether the defendant is likely torecidivate, that the offender is not amenable to communitycontrol and that prison is consistent with the purposes of andprincipals of sentencing as set forth in Section 2929.11 of theOhio Revised Code.
 While, uhm, counsel did a good job on behalf of the defendant,and he does have what we would call a clean prior record, as tothe seriousness of the crime, the Court notes the defendant hasshown little remorse for the offense.
 And while the defendant has previously stated in thiscourtroom that he's sorry for the harm he caused, the PresentenceInvestigation . . . discloses that after the . . . defendantbecame the target of the investigation, defendant contacted anassociate and asked him to construct fraudulent invoices becausehe was in trouble.
 * * * In addition, [the defendant's] response — his sorrow,if you will, was also demonstrated when he contacted his bank andhad two of his savings accounts closed and put, uh, the funds inhis wife's name.
* * *
As to seriousness, the victim suffered serious economic harm.The defendant held a position of trust with the victim. He wasallowed free access to the storeroom where he committed his crimetime and time again.
 This crime caused others at the Budd company to come underscrutiny, to be accused of theft and/or negligent work. . . . Oneapparently lost a job. . . .
* * *
The defendant's occupation and relationship with the victimall facilitated the offense, all for money the defendant said hedid not need.
 The repeated thefts in amounts varying, but, uh, certainlyhovering at the half million dollar mark, undoubtedly jeopardizedjobs and the financial stability of a company that is a mainstayin the Carey-Wyandot County community. Therefore, it is thesentence of the law and the judgment of this Court that thedefendant be sentenced to a basic prison term of threeyears. . . .
* * *
The Court finds that the shortest prison term possible woulddemean the seriousness of the offense, given the amount of moneyand what the defendant was willing, uh, to jeopardize inobtaining that money. Not just for himself, but, uh, jeopardizein — in the sense of his victims.
 Further, the Court finds a minimum term would not adequatelyprotect the public from future crime by the offender or others.
Sentencing Hearing Tr. pp. 42-45.
 {¶ 14} Based on a review of this hearing, we cannot conclude by clear and convincing evidence that Lester's sentence is contrary to law or not supported by the record. First, we note the impact of Lester's conduct. Primarily, we highlight the fact that someone lost their job because Lester was stealing from Thyssen Krupp Budd. Others were wrongfully accused of thievery. Moreover, the company headquarters threatened the plant with a warning to "clean up their act" because of the missing inventory. Despite the thousands of dollars in parts that Lester stole from Thyssen Krupp Budd, the plant had to spend additional resources, including man-hour and money, to reorganize the tool room.
 {¶ 15} Second, we note Lester's lack of remorse for his actions. Specifically, Lester claimed that his conduct was "stupid" because he "did not need the money." Furthermore, his lack of remorse is displayed through his attempted cover-up.
 {¶ 16} In sum, the result of Lester's impact coupled with his lack of remorse does not demonstrate that the trial court erred in sentencing Lester to three years incarceration. Moreover, we cannot conclude by clear and convincing evidence that the trial court erred in finding the minimum prison term would demean the seriousness of Lester's conduct or would not adequately protect the public from future crimes. Accordingly, Lester's first assignment of error is overruled.
 {¶ 17} Finally, in Lester's second assignment of error, he urges to reverse our holding in State v. Trubee, 3rd Dist. No. 9-03-65, 2005-Ohio-552, which held that Ohio's sentencing scheme did not violate the United States Supreme Court's decisions inUnited States v. Blakely (2004), ___ U.S. ___, 124 S.Ct. 2531, and United States v. Booker (2005), ___ U.S. ___,125 S.Ct. 738. After careful consideration, we summarily reject this argument. Thus, Lester's second assignment of error is overruled.
Judgment Affirmed.
 Bryant and Rogers, J.J., concur.